**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MONIQUE DOSS, et al.**                                                             **PLAINTIFFS**

**V.**                                                                                                                          **CASE NO. 4:09CV38
4:09CV76
4:10CV02
4:10CV03
4:10CV17**

**NPC INTERNATIONAL, INC.**                                           **DEFENDANT**

## MEMORANDUM OPINION

This cause comes before the court on the motion **[105]** of Defendant NPC International, Inc. seeking summary judgment.

The nineteen plaintiffs in this consolidated action, along with a group from their church, consumed a meal on January 18, 2009 at Defendant NPC International, Inc.'s Pizza Hut restaurant in Greenwood, Mississippi. The group had participated in a "Daniel's Fast" and had eaten nothing since before midnight at the time of their mid-afternoon meal. Plaintiffs allege that each of them contracted food poisoning from the chicken wings and Meat Lovers pizza and became ill immediately after their meal. The Mississippi State Department of Health conducted an investigation, but the results did not yield a clear explanation of the illnesses.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the

nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110.

Plaintiffs have claimed that Pizza Hut failed to use reasonable care in preparing, maintaining, shipping, packing and/or storing the food served to its patrons.

> In order to hold the operator of a restaurant liable for an injury to his customer, sustained by serving to him food not suitable for human consumption, it must be shown that the restaurateur in the selection, preparation, cooking or serving of the food so injuring the customer did not use that degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table.

*Goodwin v. Misticos*, 42 So. 2d 397, 400 (Miss. 1949). Plaintiffs' evidence presented to support their claim that the defendant breached its duty to serve food fit for human consumption includes the affidavit of Pizza Hut former employee Jessica Dixon. Ms. Dixon states that while she worked at Pizza Hut there were issues with cleanliness and maintenance. Further, she asserts that a sewage problem existed on the day the plaintiffs became ill. Specifically, Ms. Dixon states that "drainage and sewer lines were backed up at the time of the subject incident in the direct area where the chicken wings were prepared and stored." However, there is no clear evidence regarding whether sewage ever came into contact with the food served to the plaintiffs. Further, the Mississippi State Department of Health performed a risk-based inspection on January 18 and follow-up inspections on both January 19 and 20. No critical violations were discovered on

January 18. A sewage drainage back-up is not mentioned in the MSDH report. Moreover, no proof will be established at trial that the conditions Ms. Dixon describes would lead to contamination of food and that the food was served to plaintiffs.

Two non-critical violations were noted in the report, including the location of raw chicken adjacent to the deep fryer, causing its temperature to exceed the maximum cold holding temperature. It is inconclusive how long this chicken was stored at a higher temperature. However, the report is clear that the bacteria that produce toxins that can cause gastrointestinal illness with a short incubation period are not the typical bacteria found in raw chicken. Bacteria common to raw chicken is associated with fairly long incubation periods, which is inconsistent with the incubation period plaintiffs allege. Plaintiffs offer no evidence to suggest the chicken did contain bacteria that would be consistent with their symptoms.

On January 19, 2009 the MSDH determined a critical violation. The inspector witnessed a food handler dipping her hands into sanitizer solution that exceeded the maximum concentration for chlorine. There is no evidence that an employee handling food on January 18, the date of the alleged incident, committed such a violation. It is further unknown what impact the high level of chlorine would have on food and what symptoms such interaction would cause in humans.

The only other evidence presented in support of plaintiffs' negligent preparation claim is the statement by one of the plaintiffs that she identified something red in her chicken wings during consumption that she believed to be blood. Again, no expert will testify as to whether this presence would render food unfit for human consumption. More specifically, no expert will testify that the presence of blood in chicken caused the plaintiffs' symptoms. Further, the MSDH

tested the chicken on the day it was served to plaintiffs, but found it to be untainted.

It is clear that the plaintiffs will be unable to establish that they were served food that was unfit for human consumption, based on the documents and exhibits before the court. As such, Plaintiffs cannot establish that the Defendant breached a duty owed to them and its negligent preparation claim must fail as a matter of law.

Defendant further argues that even if Plaintiffs can establish a breach of duty, a causal link between the alleged illness and negligence on the part of Pizza Hut does not exist. This court agrees. Defendant points to the fact that the plaintiffs have not designated an expert who can establish causation. Plaintiffs' only expert who would testify at trial, Dr. Paula Spence-Evans, was the treating physician of some of the plaintiffs who sought medical attention. However, Dr. Spence-Evans may only offer testimony regarding the treatment discussed in the notes of the Plaintiffs' medical records.[1] A review of these records reveals that no conclusive diagnosis of food poisoning was determined for any of the nineteen plaintiffs.

It is clear that the diagnosis provided for some of the plaintiffs was based on the patient's own statements made to the physician. Treatment notes reveal that Joseph Doss suffered no symptoms, but simply wanted to "check it out." Doss reported that one of more persons in the group started vomiting after looking at some hot wings that were undercooked. Joseph Doss' final diagnosis was "[e]xposed to undercooked food; hysteria." Similarly, Ladarius Johnson had no complaints himself, but was in the emergency room "for check." It was noted that others in the group were sick and experiencing nausea and vomiting. A physician diagnosed Johnson with

---

[1] *See* Docket No. 82. Plaintiffs have submitted an affidavit by Dr. Spence-Evans with their response to the instant motion. This affidavit attempts to definitively diagnosis eighteen of the plaintiffs with gastroenteritis caused by food poisoning. Plaintiffs' medical records do not reach such a conclusion and thus, the affidavit contains new opinions not previously disclosed and beyond the reach of her limited testimony at trial.

possible toxin exposure. Opinions based strictly on the history related to a physician by a patient are insufficient to establish causation. *John Morrell & Co. v. Shultz*, 208 So. 2d 906, 907 (Miss. 1968).

Another plaintiff, Tamara Green, reported experiencing nausea for two to three weeks, which was worse in the mornings. Testing revealed that Green was pregnant. Nothing in her record indicates that food poisoning played a role in her nausea on January 18, 2009.

Plaintiff Nancy Pointer complained with a cough, but left the emergency room prior to treatment. Pointer was given no diagnosis.

Monique Doss did exhibit symptoms of vomiting and diarrhea and was diagnosed with "Enteritis (non-food poisoning)" on January 18, 2009. She returned to the hospital on January 21 after her symptoms failed to subside. Doss had not used her prescribed suppositories, as they were uncomfortable. Stool sampling was performed on this visit, yielding negative results for parasites.

Not one plaintiff was definitively diagnosed with food poisoning. Rather, physicians diagnosed a few patients with possible food poisoning apparently based on the sole fact that symptoms included nausea and diarrhea and the patient's statements to physicians that they had been exposed to undercooked food. To conclude that Plaintiffs suffered from gastroenteritis at the hands of undercooked food prepared by the Defendant would be speculative at best. "It is well settled in this jurisdiction [Mississippi] that a verdict may not be based upon surmise or conjecture and that to prove a possibility only is insufficient to make a jury issue." *John Morrell & Co.,* 208 So. 2d at 907 (Miss. 1968) (citing *Berry v. Brunt*, 172 So. 2d 398 (1965)). Further, even had all the plaintiffs suffered from food poisoning, negligence on the part of Pizza Hut

5

could still not be assumed. *Goodwin*, 42 So. 2d at 388-89.

Plaintiffs also claim that Defendant was negligent in training, hiring, and/or supervising. Plaintiffs again point to Jessica Dixon's affidavit, wherein she states that Pizza Hut had issues with training and staffing. However, Plaintiffs fail to show what specific issues occurred that led to any injury suffered by them or that Defendant lacks a training program. The mere fact that violations were reported by the MSDH does not establish a breach by the Defendant in regards to its training procedures.

For these reasons, Defendant's motion **[105]** is **GRANTED**.

This the 24th day of February, 2011.

                              **/s/ MICHAEL P. MILLS**
                              **CHIEF JUDGE**
                              **UNITED STATES DISTRICT COURT**
                              **NORTHERN DISTRICT OF MISSISSIPPI**